# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

8:26-cv-4666-KKM-CPT

ZEVON TARUSES MCCARTER, individually, and
INNOVATIVE INVENTOLOGIES INC.,

Plaintiffs,

v.

SPECTRUM CUSTOM MOLDS & MANUFACTURING, INC., and
MICHAEL GUIDOBONI, individually,

Defendants.

Case No.: _

COMPLAINT FOR DAMAGES

JURY TRIAL DEMANDED

## NATURE OF ACTION

1. This is an action for breach of contract, conversion, fraud, unjust enrichment, breach of fiduciary duty, and constructive trust arising from Defendants' misappropriation of Plaintiff's funds totaling $100,000, of which $50,000 remains unpaid plus interest and damages.

2. Plaintiffs seek return of $50,000, return of two Easy Saucy Holder molds, accounting of funds used for Defendants' facility construction, equitable interest in Defendants' facility, compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

3. **Total damages sought exceed $4,000,000.**

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

5. The amount in controversy exceeds $75,000, exclusive of interest and costs.



6. **Complete diversity exists between Plaintiffs and Defendants:**

    a. Plaintiff Zevon Taruses McCarter is a citizen of Florida

    b. Plaintiff Innovative Inventologies Inc. is a Florida corporation with its principal place of business in Florida

    c. Defendant Spectrum Custom Molds & Manufacturing, Inc. is a Florida corporation with its principal place of business in Sarasota County, Florida

    d. Defendant Michael Guidoboni is a citizen of Florida

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

# PARTIES

## PLAINTIFFS

8. **Zevon Taruses McCarter** is an individual residing in Hillsborough County, Florida, and CEO of Innovative Inventologies Inc.

9. **Innovative Inventologies Inc.** is a Florida corporation engaged in product development and manufacturing.

## DEFENDANTS

10. **Spectrum Custom Molds & Manufacturing, Inc.** is a Florida corporation with its principal place of business in Sarasota County, Florida.

11. **Michael Guidoboni** is an individual residing in Florida and CEO of Spectrum Custom Molds & Manufacturing, Inc.

# FACTUAL ALLEGATIONS

### A. THE BUSINESS RELATIONSHIP

12. In or around 2021, Plaintiff Zevon McCarter entered into a business relationship with Defendants for tooling and manufacturing services related to Plaintiff's inventions.

13. Defendant Michael Guidoboni held himself out as Plaintiff's "project manager" and business partner, creating a fiduciary relationship.

14. Defendants represented that they would provide a "safe place" for Plaintiff to bring his inventions and that they would handle Plaintiff's funds with integrity.

### B. THE $100,000 INVESTMENT

15. Between 2021 and 2023, Plaintiff paid Defendants $100,000 for tooling and manufacturing services.

16. **Defendants represented that funds would be allocated as follows:**

    a. Easy Saucy Holder mold (Generation 2): $25,000

    b. Other Plaintiff IP matters: $5,000

    c. Remaining balance held for future projects: $70,000

17. Defendants provided Plaintiff with two Easy Saucy Holder molds as partial performance of the contract.

## C. MISAPPROPRIATION OF $70,000

18. In or around 2023, Defendant Michael Guidoboni informed Plaintiff that he had "fallen on hard times" and needed to use Plaintiff's $70,000 temporarily.

19. Defendant Michael Guidoboni represented that he went into his home gun safe where he kept Plaintiff's money and used it for urgent financial needs.

20. Plaintiff agreed to allow Defendants to use the $70,000 temporarily based on Defendants' representations of hardship and promises to return the funds.

21. **Upon information and belief, Defendants used Plaintiff's $70,000 to finance construction of Spectrum Custom Molds' new facility (over 10,000 square feet).**

22. Defendants never disclosed to Plaintiff that his $70,000 was being used for facility construction.

23. Defendants never obtained Plaintiff's consent to use his funds for facility construction.

24. Defendants never offered Plaintiff an ownership interest in the facility in exchange for his $70,000 investment.

## D. PARTIAL RETURN OF FUNDS - $20,000

25. In 2023, Plaintiff experienced severe financial hardship and requested return of his $70,000.

26. **Defendant Michael Guidoboni made numerous excuses and delays, including:**

    a. "Son has truck out of town with safe key"

    b. "Mother-in-law broke hip"

    c. "Wife broke leg"

27. After weeks of delays, Defendant Michael Guidoboni met Plaintiff at Hard Rock Casino and returned only $20,000 in Grow Financial Bank envelopes.

28. Defendants retained $50,000 of Plaintiff's funds.

## E. PLAINTIFF'S FINANCIAL CRISIS & DEFENDANTS' REFUSAL TO HELP

29. In September 2023, Plaintiff was incarcerated for three months.

30. During Plaintiff's incarceration, Defendant Michael Guidoboni promised to give Plaintiff's wife $10,000 to help with expenses and children.

31. Defendant Michael Guidoboni broke this promise, claiming he "could not sell his Harley Davidson" to pay the $10,000.

32. As a direct result of Defendants' failure to return Plaintiff's $50,000 or provide promised $10,000, Plaintiff was forced to sell his car to pay rent while incarcerated.

33. In December 2023, Plaintiff was released from jail.

34. Twelve days after Plaintiff's release, Plaintiff's father-in-law died from stage 4 cancer.

35. Plaintiff contacted Defendant Michael Guidoboni requesting his $50,000 to pay for funeral expenses and headstone.

36. Defendant Michael Guidoboni claimed he was "broke" and could not return Plaintiff's funds.

37. As a direct result, Plaintiff's father-in-law still has no headstone (as of February 2026).

## F. LOSS OF THE FRESHENER CORPORATION

38. Plaintiff owned and operated The Freshener Corporation, a manufacturing facility of approximately 6,500 square feet.

39. **The facility contained:**

    a. Nearly 2 million products (inventory valued at $500,000)

    b. Brand new 8-head bottling machine (valued at $250,000)

    c. Studio equipment (valued at $50,000)

    d. Critical tax documents

    e. Substantial business assets

40. Plaintiff requested his $50,000 from Defendants to fund moving The Freshener Corporation to avoid eviction.

41. Defendant Michael Guidoboni offered Plaintiff space in Spectrum Custom Molds facility but Plaintiff needed $4,000-$6,000 to move the entire facility.

42. Plaintiff asked Defendant Michael Guidoboni if he could sell his motorcycle (previously mentioned as being sold to pay Plaintiff $10,000) to provide moving funds.

43. Defendant Michael Guidoboni claimed motorcycle was "under contract" with sales company and could not be retrieved for 30 days.

44. In a subsequent conversation, Defendant Michael Guidoboni claimed motorcycle was "destroyed in a storm that hit the bike shop."

45. As a direct result of Defendants' failure to return Plaintiff's $50,000 or provide moving funds, Plaintiff lost The Freshener Corporation entirely.

46. Nearly 2 million products were stolen or thrown away.

47. All equipment and critical documents were lost.

48. **Estimated loss: $800,000 to $1,000,000.**

## G. SECRET CHARGES - $36,540.33

49. On or around December 17, 2025, Defendant Michael Guidoboni revealed to Plaintiff that Defendants had secretly charged Plaintiff for "unbilled support" totaling $36,540.33.

50. **These charges allegedly included:**

    a. Over 230 hours of "research and patent/meeting support"

    b. $3,400 of "mold maintenance fees" for two tools in inventory

    c. Various other undisclosed charges

51. **Defendants never disclosed these charges to Plaintiff at any time prior to December 17, 2025.**

52. **Defendants never invoiced Plaintiff for these charges.**

53. **Defendants never obtained Plaintiff's agreement to these charges.**

54. **Defendants never discussed these charges with Plaintiff before unilaterally deducting them from his balance.**

55. **Defendants claimed these charges were incurred "since 2023" - the same period when Plaintiff was:**

    a. Incarcerated (twice)

    b. Homeless

    c. Experiencing multiple family deaths

    d. Unable to pay for his father-in-law's headstone

56. **Defendants unilaterally decided to charge Plaintiff and deduct from his $50,000 balance.**

57. **Defendants now claim Plaintiff's balance is only $13,459.67 (not $50,000).**

58. **This constitutes fraud, conversion, and breach of contract.**

## H. UNFAIR BUSINESS TACTICS

59. Defendants' alleged "research and patent/meeting support" services were never part of the original agreement.

60. Defendants never represented that they would charge Plaintiff for conversations, meetings, or research.

61. **Upon information and belief, Defendants intentionally failed to disclose these charges to keep Plaintiff's funds hostage and ensure Plaintiff would only use Defendants for future projects.**

62. **Upon information and belief, Defendants' business model involves holding client funds and secretly charging for "unbilled support" to reduce client balances without client knowledge or consent.**

63. This constitutes unfair and deceptive business practices.

## I. DIGIADS TAGLIGHT HOLDER - CONTINUED UNFAIR TACTICS

64. In December 2025, Plaintiff invented the "DigiAds Taglight Holder" - a legal, compliant license plate frame with integrated LED tag lights.

65. Plaintiff contacted Defendant Michael Guidoboni about applying his $50,000 balance toward the DigiAds Taglight Holder mold.

66. **Defendants raised numerous barriers:**

    a. Design needed: $100,000 (before anything starts)

    b. Tooling timeline: 6-8 months (not 4 months as Plaintiff needed)

    c. Minimum tooling cost: $200,000-$600,000

    d. "Can't quote without design"

    e. "Need to discuss" (more meetings, more secret charges)

67. **Upon information and belief, Defendants' intent was to drag out the process, charge Plaintiff for every interaction, and prevent Plaintiff from succeeding with his invention.**

# DAMAGES

## A. COMPENSATORY DAMAGES

**Return of Principal:**

- $50,000 (balance owed)

**Interest on $50,000:**

- From 2023 to present (approximately 3 years at 10% = $15,000)

Loss of The Freshener Corporation:

- Inventory: $500,000
- Equipment: $250,000
- Business interruption: $50,000
- **Subtotal: $800,000**

Loss of Business Opportunities:

- DigiAds Taglight Holder (delayed launch due to lack of funds): $250,000
- Other inventions (unable to develop due to lack of funds): $100,000
- **Subtotal: $350,000**

Consequential Damages:

- Father-in-law's headstone (still unpaid): $5,000
- Emotional distress: $100,000
- **Subtotal: $105,000**

**Total Compensatory Damages: $1,320,000**

## B. EQUITABLE RELIEF - CONSTRUCTIVE TRUST

68. Defendants used Plaintiff's $70,000 to finance construction of Spectrum Custom Molds' facility.

69. **Plaintiff is entitled to an equitable interest in the facility proportional to his $70,000 contribution.**

70. **Plaintiff requests:**

   a. Accounting of total construction costs

   b. Determination of Plaintiff's proportional ownership interest

   c. Imposition of constructive trust on Plaintiff's share of the facility

   d. **Estimated value of Plaintiff's interest: $70,000 to $500,000 (depending on total facility value)**

## C. PUNITIVE DAMAGES

71. Defendants' conduct was willful, malicious, and fraudulent.

72. Defendants secretly charged Plaintiff while Plaintiff was incarcerated, homeless, and suffering family tragedies.

73. Defendants used Plaintiff's funds to enrich themselves while Plaintiff lost everything.

74. Punitive damages are warranted.

75. **Punitive Damages Sought: $3,000,000 (3:1 ratio per Florida case law)**

**D. RETURN OF PROPERTY**

76. Plaintiff is entitled to return of the two Easy Saucy Holder molds currently in Defendants' possession.

77. **Estimated value of molds: $25,000 each = $50,000 total**

# TOTAL DAMAGES SOUGHT: $4,870,000

| Category | Amount |
| --- | --- |
| Return of Principal | $50,000 |
| Interest | $15,000 |
| Loss of The Freshener Corporation | $800,000 |
| Loss of Business Opportunities | $350,000 |
| Consequential Damages | $105,000 |
| Equitable Interest in Facility | $70,000 - $500,000 |
| Return of Molds | $50,000 |
| Compensatory Damages | $1,440,000 - $1,870,000 |
| Punitive Damages | $3,000,000 |
| TOTAL | $4,440,000 - $4,870,000 |

# COUNT I: BREACH OF CONTRACT

78. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

79. Plaintiffs and Defendants entered into a contract whereby Plaintiffs paid $100,000 for tooling and manufacturing services.

80. **Defendants breached the contract by:**

    a. Misappropriating $70,000 for facility construction without Plaintiffs' consent

    b. Failing to return $50,000 upon Plaintiffs' request

   c. Secretly charging $36,540.33 without prior agreement or disclosure

   d. Failing to provide agreed-upon services

81. As a direct and proximate result, Plaintiffs suffered damages exceeding $1,000,000.

WHEREFORE, Plaintiffs demand judgment for compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

## COUNT II: CONVERSION

82. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

83. Plaintiffs had ownership and right to possession of $50,000 held by Defendants.

84. Defendants intentionally exercised unauthorized control over Plaintiffs' $50,000.

85. Defendants used Plaintiffs' funds for their own benefit (facility construction, operating expenses).

86. Defendants refused to return Plaintiffs' funds despite repeated demands.

87. As a direct and proximate result, Plaintiffs suffered damages exceeding $50,000 plus interest.

WHEREFORE, Plaintiffs demand judgment for compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

## COUNT III: FRAUD

88. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

89. **Defendants made false representations:**

   a. Funds would be used for Plaintiffs' projects

   b. Funds would be returned upon request

   c. Defendants would help Plaintiffs during hardship

   d. Motorcycle would be sold to pay Plaintiffs $10,000

   e. Defendants were "broke" and unable to pay

90. Defendants knew these representations were false when made.

91. Defendants intended Plaintiffs to rely on these representations.

92. Plaintiffs justifiably relied on these representations.

93. As a direct and proximate result, Plaintiffs suffered damages exceeding $1,000,000.

WHEREFORE, Plaintiffs demand judgment for compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

## COUNT IV: UNJUST ENRICHMENT

94. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

95. Plaintiffs conferred a benefit upon Defendants ($100,000 payment).

96. Defendants had knowledge of the benefit.

97. Defendants accepted and retained the benefit.

98. Defendants used Plaintiffs' $70,000 to construct their facility.

99. It would be inequitable for Defendants to retain the benefit without paying value to Plaintiffs.

100. Plaintiffs are entitled to restitution of $50,000 plus interest and equitable interest in Defendants' facility.

WHEREFORE, Plaintiffs demand judgment for restitution, equitable relief, and such other relief as the Court deems just and proper.

## COUNT V: BREACH OF FIDUCIARY DUTY

101. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

102. Defendants held themselves out as Plaintiffs' "project manager" and business partner.

103. A fiduciary relationship existed between Plaintiffs and Defendants.

104. Defendants owed Plaintiffs duties of loyalty, care, and good faith.

105. **Defendants breached these duties by:**

   a. Misappropriating Plaintiffs' funds

   b. Secretly charging Plaintiffs without disclosure

   c. Refusing to help Plaintiffs during catastrophic hardship

   d. Prioritizing Defendants' interests over Plaintiffs' interests

106. As a direct and proximate result, Plaintiffs suffered damages exceeding $1,000,000.

WHEREFORE, Plaintiffs demand judgment for compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

## COUNT VI: CONSTRUCTIVE TRUST

107. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

108. Defendants used Plaintiffs' $70,000 to finance construction of Spectrum Custom Molds' facility.

109. Defendants hold legal title to the facility but Plaintiffs have an equitable interest proportional to their $70,000 contribution.

110. It would be unjust for Defendants to retain full ownership of the facility without compensating Plaintiffs for their contribution.

111. Plaintiffs request that this Court impose a constructive trust on Plaintiffs' proportional share of the facility.

**WHEREFORE, Plaintiffs demand:**

- Accounting of total facility construction costs
- Determination of Plaintiffs' proportional ownership interest
- Imposition of constructive trust
- Such other equitable relief as the Court deems just and proper

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs respectfully request that this Court:**

1. Assume jurisdiction over this matter

2. Enter judgment in favor of Plaintiffs and against Defendants on all counts

3. Order Defendants to return $50,000 plus interest to Plaintiffs

4. Order Defendants to return two Easy Saucy Holder molds to Plaintiffs

5. **Order Defendants to provide full accounting of:**

    a. All funds received from Plaintiffs

    b. All charges assessed against Plaintiffs

    c. All uses of Plaintiffs' $70,000

    d. Total construction costs of Defendants' facility

6. Determine Plaintiffs' proportional ownership interest in Defendants' facility

7. Impose constructive trust on Plaintiffs' share of Defendants' facility

8. Award compensatory damages of $1,440,000 to $1,870,000

9. Award punitive damages of $3,000,000

10. Award pre-judgment and post-judgment interest

11. Award costs and attorneys' fees

12. Grant such other and further relief as the Court deems just and proper

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Zevon Taruses McCarter
Zevon Taruses McCarter, Pro Se
On behalf of Innovative Inventologies Inc.
Email: reasonablejuristcorp@gmail.com

Mailing address: 14886 Summer Branch Dr
Lithia, FL 33547

**Drafted by:** RJ Corp AI Optimized Pro Se Portal

Dated: February 18, 2026



Transparency in action. Accountability through documentation. **We Strengthen Procedural Accountability.**

END OF FEDERAL COMPLAINT - MCCARTER V. SPECTRUM CUSTOM MOLDS